UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DWIGHT CHIMURENGA WALLER, et al,

    Plaintiffs,

v.                                                 CASE NO: 8:05-cv-1467-T-23MSS

CITY OF ST. PETERSBURG, et al,

    Defendants.

_____/

**ORDER**

Proceeding *pro se*, the plaintiffs submit a "Motion for Emergency Temporary Injunction" (Doc. 15), which the court construes as a motion for a preliminary injunction pursuant to Local Rule 4.06 and Rule 65, Federal Rules of Civil Procedure. The plaintiffs seek to enjoin the November 8, 2005, election for the St. Petersburg City Council (and any future elections). The City of St. Petersburg ("the City") responds (Doc. 24) that the plaintiffs fail to satisfy either the substantive or the procedural prerequisites for a preliminary injunction.

To establish entitlement to a preliminary injunction, the plaintiffs must show (1) a substantial likelihood of success on the merits; (2) an irreparable injury to the plaintiffs in the absence of the injunction; (3) a threatened injury to the plaintiffs that exceeds any injury to the defendant caused by the injunction; and (4) the absence of a material adverse consequence to the public. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). The plaintiffs' motion and supporting

memorandum (Docs. 15, 16) are markedly insufficient to satisfy the elements necessary for preliminary injunction.

The plaintiffs' amended complaint (Doc. 17) is neither verified nor supported by affidavit,[1] which leaves mere unsworn allegations that are insufficient to support an injunction. More particularly, the plaintiffs present scant, largely conclusory allegations to establish a likelihood of success on the merits of their claim that the City's "hybrid" at-large method of electing city council members unlawfully dilutes minority voting strength in violation of Section 2 of the 1965 Voting Rights Act and is maintained for a discriminatory purpose in violation of the Fourteenth and Fifteenth Amendments.

The merits of this allegation are governed primarily by Thornburg v. Gingles, 478 U.S. 30 (1986), which establishes three prerequisites for maintaining a claim of vote dilution under Section 2 of the 1965 Voting Rights Act. 478 U.S. at 49-51. These "Gingles factors" require the plaintiffs to prove (1) a sufficiently compact and numerous minority community, (2) a historical pattern of minority political cohesion or bloc voting, and (3) a historical pattern of majority bloc voting. Johnson v. Hamrick, 296 F.3d 1065, 1070 (11th Cir. 2002). If one or more of the Gingles factors is not shown, the plaintiffs' Section 2 claim must fail. If all are shown, the district court must then review all relevant evidence under the totality of the circumstances. Johnson v. Hamrick, 196 F.3d 1216,

---

[1] The plaintiffs merely attach to the amended complaint an uncertified copy of the municipal charter of the City (marked as Exhibit A), an uncertified copy of Ordinance No. 588-G of the City's code, and two tables purporting to provide 1990 and 2000 U.S. Census data for voting precincts constituting District 6 (collectively marked as Exhibit B). Other "exhibits" referenced in the plaintiffs' "Memorandum of Law in Support of the Plaintiffs' Motion for Emergency Temporary Injunction" (Doc. 16) are absent from the docket.

1220 (11th Cir. 1999). Thus, to establish a likelihood of success on the merits, the plaintiffs must demonstrate a likelihood of satisfying the Gingles factors.

The first Gingles factor requires a minority group to "demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district." Thornburg v. Gingles, 478 U.S. 30, 50 (1986). In Exhibit B, the plaintiffs provide U.S. Census data for the City's District 6, which reveals a 66.18% black majority for 1990 and a 59.78% black majority for 2000. The plaintiffs further allege that, as a result of the City's May 15, 2003, redistricting, 54% of the registered voters in District 6 are black (Doc. 16, at 13). The City's population is approximately 22% black (Doc. 24, at 7), and the City does not dispute that black residents inhabit a relatively compact geographic area. The plaintiffs arguably satisfy the first Gingles requirement.

The second Gingles factor requires the plaintiffs to demonstrate minority political cohesion or bloc voting for clear political preferences that are distinct from those of the majority. See Gomez v. City of Watsonville, 863 F.2d 1407, 1415 (9th Cir. 1988). The plaintiffs refer in a conclusory manner to a monolithic "vote of the black community" (Doc. 16, at 5) but fail to provide a factual account, statistical or otherwise, of the black community's pattern of political cohesion in opposition to the majority. The plaintiffs assert that the City's current mayor, Rick Baker, received "the majority of the black vote in the final election" (Doc. 16, at 13) and that black city council candidates "cater their campaign to the majority (white) electorate" thereby "exercising majority bloc voting" (Doc. 16, at 12). Not only are these conclusions undetailed and unsupported by facts in the record, the conclusions suggest a similarity in voting between the majority and

minority communities. Also, the plaintiffs concede (Doc. 16, at 11) that the City's most recent redistricting was approved by Ernest Williams, a black city council representative for District 6. None of these claims presents evidence sufficient to create a probability that the plaintiffs can successfully prove bloc voting by the minority in opposition to the majority. Accordingly, the plaintiffs fail to satisfy the second <u>Gingles</u> factor.

The third <u>Gingles</u> factor requires the plaintiffs to show "not only that whites vote as a bloc, but also that white bloc voting *regularly causes* the candidate preferred by black voters to lose." <u>Johnson v. Hamrick</u>, 196 F.3d 1216, 1221 (11th Cir. 1999) (emphasis in original). The plaintiffs also must show "not only that blacks and whites sometimes prefer different candidates, but that blacks and whites *consistently* prefer different candidates." <u>Johnson v. Hamrick</u>, 196 F.3d 1216, 1221 (11th Cir. 1999) (emphasis in original). The plaintiffs again fail to create a record, statistical or otherwise, that establishes a probability of success in satisfying the third <u>Gingles</u> factor.[2] Failing to satisfy each of the <u>Gingles</u> factors, the plaintiffs fail to demonstrate a substantial likelihood of success on the merits.

To qualify for preliminary injunction, the plaintiffs must also present evidence of irreparable harm in the absence of an injunction. <u>Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.</u>, 320 F.3d 1205, 1210 (11th Cir. 2003). The plaintiffs allege irreparable harm, again in a conclusory fashion, but fail to provide any detailed evidence

---

[2] The plaintiffs refer, without evidentiary support, to two city council elections from 1979 and 1989. In each election, the person who reportedly received more votes during the single-district primary ultimately lost the at-large election (Doc. 16, at 10). The City points out that Charles Shorter, the winner of the 1989 election, was himself a black candidate (Doc. 24, at 7). Neither election outcome, if verified, demonstrates that blacks and whites *consistently* prefer different candidates.

of the nature or extent of the prospective harm.  An injunction is available as a potential remedy  "only after a plaintiff can make a showing that some independent legal right is being infringed–if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004).  However, because it is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but "only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982).  In this instance, the plaintiffs fail to explain why, if they ultimately prevail on the merits, for example, invalidating the City's election and voting anew fails to provide an adequate remedy.  See Goosby v. Town Bd. of Hemptstead, N.Y., 981 F.Supp 751, 763 (E.D.N.Y. 1997), aff'd, 180 F.3d 476 (2d Cir. 1999) (denying an injunction because "if plaintiffs prevail on appeal, there is nothing to prevent a special election to remedy the Section 2 violation").

A preliminary injunction requires a balancing of the harm that threatens the plaintiffs in the absence of injunction against the harm that will befall the defendants as a result of the injunction.  The plaintiffs apparently assume that enjoining an election–in the midst of active campaigning by formally qualified candidates with campaign supporters mobilized, campaign treasuries accumulating, and promotional efforts ongoing–causes no harm to the defendants.  In fact, the plaintiffs offer only the conjecture that, if the November 8, 2005, city council election is enjoined, the City "will not suffer any hardship" but "would benefit monetarily through the capital saved through

the process of one single election, as opposed to two" (Doc. 16, at 9). This curious dismissal of the salutary effects of an election is contrary to fundamental principles attendant to a republican form of government, to which this court remains attentive (for example, in considering the balance of the plaintiffs' claims under the Voting Rights Act of 1965, which assumes that elections are not merely an occasion for incurring additional expense).

To the contrary, granting an injunction to postpone an election, especially after candidates have already qualified for office (Doc. 24, at 9), disrupts the operation of the historic mechanism of local government, frustrates the expectations of prospective voters, renders superfluous human and financial exertions by everyone involved, and inserts the federal court between the local government and local voters as they prepare to choose their leaders, all of which distinctly disserves the public interest, albeit to an extent difficult to measure with precision. See Simpson v. City of Hampton, Va., 919 F.Supp 212, 215 (E.D. Va. 1996).

Of course, notwithstanding a measure of disservice to the public, injunction is available as a remedy pursuant to the Voting Rights Act of 1965 in instances of unlawful dilution of the minority vote. However, precisely because this remedy affects legitimate expectations of the public, injunction is available only upon a properly documented and established showing of those matters required by law.[3] In this instance and at this

---

[3] For a fuller understanding of the threshold they must satisfy to successfully sue, the plaintiffs should consult United States v. Charleston County, S.C., 960 F.2d 1227 (4th Cir. 2004), and Goosby v. Town Bd. of Hempstead, N.Y., 981 F.Supp 751, 763 (E.D.N.Y. 1997), aff'd, 180 F.3d 476 (2d Cir. 1999) . For an excellent overview of Section 2 claims under the 1965 Voting Rights Act, see Tim A. Thomas, Annotation, "At-Large Elections as violation of § 2 of Voting Rights Act of 1965 (42 USCS § 1973), 92 A.L.R. FED. 824 (1989).

preliminary stage of their case, the plaintiffs fall markedly short of establishing an adequate record (even discounting somewhat for their *pro se* status).[4]

In addition to its many substantive shortcomings, the plaintiffs' motion fails to comply with the procedural requirements of Local Rules 4.05 and 4.06. The plaintiffs' complaint is neither verified nor supported by affidavit. The plaintiffs' motion fails to address the amount of security the plaintiffs must post as required under Rule 65(c), Federal Rules of Civil Procedure. The plaintiffs also fail to submit a proposed form of preliminary injunction.

The plaintiffs' "Motion for Emergency Temporary Injunction" (Doc. 15) provides no basis for preliminary injunction. Accordingly, the motion is **DENIED**.

ORDERED in Tampa, Florida, on September 30, 2005.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[4] The plaintiffs are entitled to proceed *pro se*, and a pleading drafted by a *pro se* party is interpreted under less stringent standards than a pleading drafted by an attorney. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "[e]ven in the case of *pro se* litigants . . . leniency does not give a court license to serve as *de facto* counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998). In view of the complexity of this case, the court urges the plaintiffs to obtain the assistance of counsel.